The next case this morning is 524-0583, People v. Travis. Arguing for the appellant is Stephanie Glassberg. Arguing for the appealee is Sharon Shanahan. Each side will have 10 minutes for their argument. The appellant will also have 5 minutes for rebuttal. Please note, only the clerk of the court is permitted to record these proceedings today. Good morning, ladies. As you can see, we are missing a justice on the panel. Justice Barberis has been assigned to your case, but he cannot join us this morning. So, as you know, the oral arguments are being recorded, and he will have the audio available to him along with the briefs and the record. So, from there, we will begin. Ms. Glassberg, for the appellant. Good morning, and may it please the court. I'm Stephanie Glassberg, and I represent the appellant, Mr. Dario Travis. The trial court abused its discretion when it sentenced a 20-year-old Mr. Travis to 23 years as an accomplice to aggravated battery when the principal co-defendant was sentenced to 11 years. This gross disparity is unconstitutional, where fundamental fairness and respect for the law prohibit a gross disparity, arbitrary and unreasonable disparity, in sentences of similarly situated co-defendants. Mr. Travis and Mr. Hernandez are similarly situated because they both pled guilty to the same offense, aggravated battery, from the same crime, the shooting of Mr. Lehman, and were sentenced by the same judge. The only difference between Mr. Travis' and Mr. Hernandez' plea was that Mr. Travis' plea was an open plea and Mr. Hernandez' plea was a negotiated plea. In Illinois, it is a current open question as to whether open and negotiated pleas can be compared in disparate sentencing arguments. In this unique case, this court has the authority to compare Mr. Travis' and Mr. Hernandez' pleas. Illinois courts, such as the 2nd District and Anderson, have provided some guidance on potential issues in comparing open and negotiated pleas, such as a lack of information about the co-defendants, which include an individual's culpability in the offense and their criminal history. However, that is not an issue here, where Mr. Hernandez' culpability is clearly and plainly stated in the factual basis for his plea, and the full criminal history of Mr. Hernandez was provided to the sentencing court. The evidence presented by the State showed that Hernandez was more culpable for the offense as it was undisputed that Mr. Hernandez brought a gun to Mr. Lehman's house, battered, and then shot Mr. Lehman at close range, and that Mr. Hernandez has a more serious criminal history because he was just recently convicted of killing someone while driving under the influence. Determining the culpability in the offense is arguably the most important factor when considering a sentence for an individual. Certainly, it is the most important factor when comparing two co-defendants in a disparate sentencing argument. It is undisputed fact that his co-defendant, Mr. Hernandez, was more culpable for the aggravated battery. It is undisputed fact that Mr. Hernandez brought a gun to Mr. Lehman's house, threatened Mr. Lehman with the gun, got into a physical altercation with Mr. Lehman, pistol-whipped Mr. Lehman, shot Mr. Lehman in the head, and wiped his fingerprints from Mr. Lehman's bedroom as he was leaving. All the while, Mr. Travis never touched the gun, never threatened Mr. Lehman, and never physically touched Mr. Lehman. Even though it is clear from the record and the state's evidence that Mr. Hernandez was the principal and more culpable for the aggravated battery committed against Mr. Lehman, Mr. Travis was sentenced to more than double Mr. Hernandez's sentence under accountability. Therefore, it is clear from the undisputed record that Mr. Travis was less culpable for the offense and his 20-year sentence is not justified. When comparing criminal histories, it is clear that Travis has a less serious criminal background than Hernandez. Travis's only priors were juvenile adjudications for non-violent misdemeanors or minor felonies such as theft, running away from home, and driving without a license. It is true that as part of the plea in this case, the state did dismiss several pending cases against Travis, but again, those cases were for all minor felonies. By comparison, Hernandez was seven years older than Travis, had a significant criminal record as an adult. Most notable, at the time of Hernandez's trial, he had just recently been convicted of an aggravated DUI causing death of another in which he was sentenced to 10 years, a sentence that the judge ordered to run concurrent to his 11-year sentence in this case. In other words, while Travis has a juvenile history of petty offenses, his seven-year-older co-defendant had recently recklessly killed a person and then shot a bullet into Mr. Lehman's head at close range. Travis's criminal history reflects that he is a non-violent offender who made some mistakes while a juvenile, opposed to Hernandez, who was an adult with a violent criminal history. Additional factors that this court may consider in sentencing, that a court may consider in sentencing, is the age and rehabilitative potential of an individual. Mr. Travis was 20 years old at the time of the offense. Mr. Hernandez was seven years older than him. Mr. Travis's mother testified at his sentencing hearing that Mr. Hernandez was Mr. Travis's older cousin, who modeled like a father figure to Mr. Travis, who grew up without a father. Being that Travis was an emerging adult and Mr. Hernandez acted as an influential father figure, it is logical that Mr. Hernandez had control over the situation, since he was the one who brought the weapon to the house, and had influence and control over Mr. Travis as well. Considering that this is a unique case where the same judge sentenced both Mr. Travis and Mr. Hernandez, that the judge had the full transcript of Mr. Hernandez's sentencing, which included his criminal history and culpability in the offense, and the fact that Hernandez was the person who brought the gun to Mr. Lehman's house, battered Mr. Lehman, and shot Mr. Lehman, and was significantly older than Mr. Travis with power and influence over him, the court abused its discretion when it sentenced Mr. Travis to more than double Mr. Hernandez's sentence, and this court should reverse Mr. Travis's sentence and remand for resentencing or impose a lesser, more appropriate sentence. For many of the same reasons that have already been argued, this sentence is excessive. Putting aside Mr. Hernandez and his plea, a 20-year-3 sentence for an accomplice in an aggravated battery is excessive, where Mr. Travis did not know that the gun was going to be used to batter Mr. Lehman, did not touch the gun, did not threaten Mr. Lehman, and did not physically touch Mr. Lehman. Mr. Travis's involvement in the interaction consisted of him setting up a time to visit Mr. Lehman's house to buy marijuana, inviting Mr. Hernandez to go with him, and taking money out of Mr. Lehman's dresser. The trial court failed to consider statutory mitigating factors such as Mr. Travis's youth, and the power and influence that Hernandez had over him in considering an appropriate sentence. The trial court failed to consider that Mr. Travis was only 20 with a nonviolent juvenile record and high rehabilitative potential. In failing to properly consider Mr. Travis's young age and the ongoing development as a mitigating factor, the trial court also put too much weight on Mr. Travis's juvenile adjudications, which were misdemeanors or nonviolent felonies, all committed when Travis was under the age of 17. The trial court also failed to recognize that Mr. Travis was heavily influenced by his older cousin, Mr. Hernandez. The trial court dismissed the defense's mitigating argument that Mr. Hernandez was the person who induced or facilitated the offense against Mr. Lehman, even though Hernandez was the one who brought the gun to Mr. Lehman's house, battered, and then shot Mr. Lehman. And again, the state concedes that there is no evidence that Mr. Travis knew that Mr. Hernandez was planning to bring a gun to Mr. Lehman's house that night. For all the reasons argued here today and in the brief, we ask that this court find that the trial court abused its discretion when it sentenced Mr. Travis to more than double his principal, co-defendant, who actually shot the complainant. We ask that the court vacate Mr. Travis's conviction and remand this case for resentencing or, in the alternative, impose a lesser, more appropriate sentence. If there are no questions from the justices, I reserve the rest of my time for rebuttal. Ms. Glassberg, you indicated this is a case, kind of a first impression, where the issue becomes how much of a comparison can you do between co-defendants? For open and negotiated pleas, correct. In this case, you kind of touched on this, but your client set up the deal kind of thing, right? The intent was to rob Mr. Lehman all along. So there's nothing in the evidence that shows that Mr. Travis knew that there was an intent to rob or harm Mr. Lehman. All that the evidence shows is that Mr. Travis was setting up a drug buy between himself and Mr. Lehman and that he brought Mr. Hernandez with him. But there's nothing in the evidence to show that Mr. Travis knew that Mr. Hernandez was bringing a gun or that Mr. Hernandez had any intent on doing anything with the gun. There's no evidence to show that Mr. Travis knew that that was going to happen or had any indication that that was going to happen. Okay. All right. Justice Moore? No questions. All right. Thank you, Ms. Glassberg. You can't add your time on, but you will have time for rebuttal after Ms. Shanahan. Ms. Shanahan, for the people. Thank you, Your Honor. May it please the court. Counsel, my name is Sharon Shanahan, and I represent the people of the state of Illinois. The state's not arguing here today that the defendant is more culpable than the co-defendant. The state is arguing that the trial court accepted the co-defendant's lesser sentence based on a negotiated plea and knowing virtually nothing about the co-defendant plea. And then a year later, it sentenced the defendant based on a thorough sentencing hearing and a 100-page PSI. It is the opinion of the state that you cannot compare a negotiated plea with an open plea any more than you can compare a negotiated plea with a verdict after trial. A verdict after trial requires a PSI. It requires a sentencing hearing. It allows testimony by witnesses. It allows evidence. It has argument by counsel. And that's exactly what you get in an open plea. And that's exactly what the defendant got here today. The most we have for Mr. Hernandez, the co-defendant, is that he had GED. He had his walk. I say this. I do not mean to make this a minor crime. He had an aggravated DUI. As a result of an alcohol-induced state, he had killed someone. I don't dispute that at all. My mother and father were both killed by a drunk driver, so it's serious. But it wasn't intentional, and it was the only crime in 27 years that the co-defendant had done anything against the law, and the trial court knew it. There were also a lot of reasons as to why the state agreed to the 11-year deal for Mr. Hernandez. They had a speedy trial date looming. They were having trouble getting witnesses. Something that the trial court knew nothing about when she sentenced Hernandez, but she did know about when she sentenced the defendant, is that as a result of being shot, Mr. Lehman had PTSD and several other emotional problems, and so there was a lot more that she knew. The defendant did tell Police Sergeant Iggemeier that he knew the victim, that he set up the drug buy, that he asked Hernandez to join him. He also said he knew that Hernandez owned a gun. Another thing is that both the victim and the victim's girlfriend testified that the defendant is the one who rummaged through the dresser drawers to find the money and take it. And finally, the defendant fled scene as soon as this was all over. These are all facts that the trial court knew as a result of a full sentencing hearing that it didn't know about Mr. Hernandez. You simply can't compare these two things. There is no doubt that the co-defendant was the shooter, but the defendant brought him into the house. As I said, the defendant knew where the money was. But for knowing Mr. Lehman, the victim, Hernandez would never have even been in that house. And one thing that the defendant makes much of is that he had only had minor crimes. Well, I think it's important, and I think the trial court did look at the fact that the defendant has a series of crimes. He keeps committing crimes. And as counsel here today noted, he had four or five pending felonies at the time of this plea. And he was not a juvenile. Finally, I would note that the defendant, contrary to what has been argued today, the trial court didn't know and consider the defendant's age. Defense counsel mentioned that the state conceded that, and the trial court mentioned it. But again, he's not a juvenile. He's 20. And I think it's reasonable to say, well, you know, when you see someone that commits a crime as a juvenile and never does it again, OK, let's give him a break. But when you see a continuing series of crimes, as opposed to one crime that resulted in a horrible result, but was caused not intentionally. I mean, Mr. Hernandez did not intend to kill the person that died in the aggravated DUI. I am not forgiving him for that. I never forgive drunks for killing people, but they don't do it on purpose. And defendants crimes were all intentional. Something that I think is important is that and there is a dispute as to how much this court can consider it. But there was an order of protection from the mother of one of the defendant's babies. Because not because he wasn't a child supporter, not because he showed up late to pick up the kid or anything like that, but because the defendant made threats to the mother, to her family. Finally, I think it is appropriate to note that the defendant had three, well, two children at the time, two babies at the time that this crime occurred and another on the way. And he had never acknowledged paternity. He had never he wasn't paying regular child support. Defendants as well, when they ask for it, he gave it to them. But that's not the way supporting your child is supposed to be. You're supposed to support your child, period. I really have nothing else to say. I would conclude unless you have questions. No questions. Just as I would. I would. Justice Moore. No question. OK, let me let me give you then my little two sentence summary. The disparity in this case is that the sentencing court accepted a negotiated plea in one case and made a reasoned decision in the other case. The trial court concluded that an open plea with a PSI and the opportunity for witnesses to testify and the opportunity for the victim to make a statement and the opportunity for the attorneys to argue aggravation and mitigation is more like a trial than a negotiated plea. And for all these reasons, the trial court found no disparity. And I asked this court to make the same mistake. OK, thank you, Miss Shanahan. Miss Glasberg, rebuttal. Yes, just a few things on rebuttal. The first is I want to address what I think is the most important question, which is the legal issue in this case. The state's argument that open pleas are more like trials and cannot be compared to negotiated pleas. That argument is premised on the fact that not enough information is produced at a negotiated plea compared to an open plea. I'm sorry, not enough information is produced at an open plea compared to a negotiated plea. But this case is unique in that both Travis and Hernandez had the same transcript from Hernandez into the record. And we understand the two most important factors in determining a sentence. Which is the criminal history and the culpability for the offense, both of which were produced in the record via Hernandez plea hearing. So while it may be true that some open and negotiated pleas cannot be compared because there was not enough information in the record, that is not the case here. Again, this is a unique case where we have the record from the negotiated plea of the co-defendant. And this court has all the information that they need to compare the co-defendant's disparate sentences. The state also touches on the child support of Mr. Travis. And in the briefs, I describe this, but I will address it again. The state's argument is confusing and nonsensical and distracting from the legal issue. The state's claims about Travis's fatherhood are not supported by the evidence in the record. The evidence in the record supports the finding that Mr. Travis voluntarily supported all of his children by providing for them emotionally and financially. It makes no sense that Mr. Travis should be punished for not formally seeking paternity or order to pay child support. It's actually the opposite. Mr. Travis should be seen as a responsible and involved father who does not need this court's intervention. Well, how does he get an order of protection against him then? The order of protection was from one of his children's mother. And it was for arguments that had occurred between two adults who are obviously having issues managing co-parenting. And we never said that the order of protection should not be considered. But we argue that the trial court treated the order of protection as a conviction, which it's not. And given all the mitigation, even considering the order of protection, the mitigation is not overwhelmed by that order of protection. The mitigation, including that he was less culpable for the offense. He was a youth when this offense occurred. He had the potential for rehabilitation. He had a history of nonviolent adjudications. He was influenced from Hernandez, who was older than him and acted as a father-like figure. And his children did rely on him. The order of protection doesn't have anything to do with Mr. Travis providing support emotionally or financially to his children. It had to do with a disagreement between two adults who were attempting to co-parent together. Okay. And regardless of all of the things that the trial court relied on in sentencing, which were his juvenile adjudications and this order of protection, which, by the way, were the only factors that the trial court considered when sentencing Mr. Travis. All of the mitigation outweighs that. All of the mitigation that's already been mentioned outweighs that. And certainly, those two things do not justify a 23-year sentence for accountability in an aggravated battery and do not justify 12 years more than double what the principal who actually shot the complaint received. So, for all those reasons and everything argued in the brief, we ask that this court find that the trial court abused its discretion when it sentenced Mr. Travis to more than double his principal co-defendant who actually shot the complainant. We ask this court vacate Mr. Travis's conviction and remand the case for resentencing or, in the alternative, impose a less or more appropriate sentence. Okay. Thank you, Ms. Glassberg. Thank you, Ms. Shanahan, for your arguments here today. The matter will be taken under advisement. We'll issue an order in due course. You ladies have a great day. Thank you, Your Honor. Thank you.